J-S42028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER  BAROSH | : | |
| | : | |
| Appellant | : | No. 3141 EDA 2018 |

Appeal from the PCRA Order Entered September 24, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008461-2010

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 26, 2020**

Appellant, Christopher Barosh, appeals from an order entered on September 24, 2018, which dismissed his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On a previous appeal, this Court accurately summarized the relevant facts of this case as follows.

> In July [] 2005, [A]ppellant purchased a home [along] South 54th Street in Philadelphia[, Pennsylvania] on behalf of his girlfriend, Jill Wezorek.  On the deed to the property, Wezorek was listed as the buyer and [A]ppellant was listed as possessing a power of attorney to act on her behalf.  In addition, [A]ppellant's name and signature appeared on a tax document with the deed.
>
> On September 9, 2005, [A]ppellant, again acting as Wezorek's agent, submitted a "Deluxe Plus" homeowners insurance policy application with Allstate Insurance Company regarding the aforementioned property. The policy had coverage limits of $126,533[.00] for the dwelling, $12,653[.00] for other structures, and $94,000[.00] for personal property.  [To] obtain this policy,

[the owner was required to occupy the property and the home needed to be under 45-years-old]. Additionally, [A]ppellant needed to provide proof of insurance from July 2005 to September 2005, the date of the application. The application submitted indicated the property was purchased in September 2005 and would be owner occupied.

Despite the insurance policy's requirement . . . [A]ppellant rented the house to Yolanda Dingle, who planned to live there with five children.

∗∗∗

Approximately a month after [Dingle] moved into the [] 54th Street property, [A]ppellant forcefully evicted [her]. [] Dingle testified that as she was putting her key into the front door, [A]ppellant approached her from behind, grabbed the key, went inside by himself, and locked her out. She was not able to remove her personal property from the house.

On September 16, 2005, Allstate, having discovered several reasons why the house did not qualify for the Deluxe Plus Policy, sent Wezorek a letter notifying her that the insurance policy would be cancelled effective October 27, 2005. Appellant did not deny receiving the letter; rather, he claimed [that] he thought the cancellation had already taken effect at the time he read the letter.

At approximately 11:00 p.m. on October 25, 2005, [nearly] 25 hours before the homeowner's policy was to be cancelled, the house was set on fire. Doris House, who lived directly next door, . . . heard her fire alarm go off and noticed a lot of smoke coming from the wall of her residence shared with [the other property.] House lived with her son, her 11-year-old nephew, and [two] grandchildren who were approximately [four] and [five] years old. [After] House woke the children and got them out of the home to safety[, she] contacted [] Dingle. [] House testified that there was smoke damage to her home and personal items, and [that] she [could] no longer . . . live in the home.

[] Dingle testified that she received a phone call from a neighbor, [] House, who informed her of the fire, knowing her belongings were inside. Upon arrival, [] Dingle met with [] House, who was "screaming and hollering." [] House told her that she saw [A]ppellant coming from the back of the house when the fire started. [] Dingle testified that she observed [A]ppellant across

the street in the window of Richard Wilson's residence, watching the fire and laughing with Wilson.

Lieutenant Bordes Ramseur of the Philadelphia Fire Department, an expert in the area of determining the causes and origin of fires, investigated this matter. He determined that the fire [was] intentionally set in the basement area and that an ignitable liquid [was] used. Louis Gahagan, a private fire investigator hired by Allstate, also testified as an expert who subsequently conducted his own investigation and reached the same conclusion; a fire began in the basement, was incendiary, and an ignitable fluid was used to accelerate the fire.

After the fire, [A]ppellant made two separate admissions of guilt. Appellant and his brother, Bryan Barosh ("Bryan"), were having an argument about a property in New Hope[,] Pennsylvania, and [A]ppellant threatened to burn the New Hope house down "like the house he burnt down in Philadelphia." Bryan further testified that [A]ppellant stated he would "take a wet [two] by [four] and jam it in a light socket until it sparked a flame . . . or use a flammable liquid or kerosene gas, whatever you use to remove paint or wallpaper from a house." Appellant also attempted to pay David Tarmin, an acquaintance and former tenant at another property, to provide him an *alibi* for the arson. During that conversation, [A]ppellant admitted to [] Tarmin that he [] set fire to the house in order to collect the insurance proceeds.

\*\*\*

A jury trial was held and[,] on December 11, 2012, [A]ppellant was convicted of arson and insurance fraud. … The Honorable Chris[topher] R. Wogan sentenced [A]ppellant to consecutive sentences of [six and one-half] to 19 years' imprisonment for arson and [six] months to [three] years for insurance fraud. Additionally, he ordered [A]ppellant to pay restitution for the damage caused by the fire.

**Commonwealth v. Barosh**, 2014 WL 10790208, at *1-2 (Pa. Super. 2014)

(unpublished memorandum) (internal citations omitted). This Court affirmed

Appellant's judgment of sentence on October 7, 2014, and our Supreme Court

subsequently denied *allocatur* on February 4, 2015. ***Id.***, *appeal denied*, 109 A.3d 677 (Pa. 2015).

On September 22, 2015, Appellant filed a timely *pro se* PCRA petition. Thereafter, Appellant filed "numerous *pro se* pleadings with the PCRA court, including a notice of appeal to this Court on March 6, 2016." ***Commonwealth v. Barosh***, 161 A.3d 387 (Pa. Super. 2017) (unpublished memorandum), at 2. Ultimately, this Court quashed Appellant's appeal because "there [was] no final order, no interlocutory order appealable by right or permission and no collateral order" and, as such, the appeal was "premature." ***Id.*** at 7.

On May 8, 2017, following quashal of Appellant's appeal, "the case was assigned to [the PCRA court because] Judge Christopher [R.] Wogan retired from the bench." PCRA Court Opinion, 8/23/19, at 3. On May 9, 2017, the PCRA court appointed counsel for Appellant. ***Id.*** Appellant, however, filed a motion to proceed *pro se* on July 27, 2017. Appellant's Motion to Proceed *Pro Se*, 7/27/17, at 1. Court-appointed counsel then filed a motion to withdraw as counsel. Motion to Withdraw, 8/2/17, at 1. On November 6, 2017, the PCRA court held a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) and "allowed [Appellant] to proceed *pro se*." PCRA Court Opinion, 8/23/19, at 3.

Appellant continued to file numerous *pro se* pleadings with the PCRA court following the November 6, 2017 ***Grazier*** hearing. On June 11, 2018, however, the PCRA court issued notice that it intended to dismiss Appellant's PCRA petition in 20 days without further proceedings, as it concluded that

Appellant's claims lacked merit. PCRA Court Order, 6/11/18, at 1; *see also* Pa.R.Crim.P. 907(1). Appellant filed two responses to the PCRA court's order on June 25, 2018 and July 11, 2018.

On July 23, 2018, Appellant filed an amended PCRA petition without seeking leave of court to do so. Appellant's Amended PCRA Petition, 7/23/18, at 1-57. In the petition, Appellant requested that the court appoint counsel. *Id*. at 50. In addition, on August 20, 2018, Appellant filed a motion for the appointment of counsel. Motion to Appoint Counsel, 8/20/18, at 1. Appellant then, on September 5, 2018, filed his second notice of appeal to this Court, which "result[ed] in the creation of . . . Superior Court case . . . 2962 EDA 2018."[1] PCRA Court Opinion, 8/23/19, at 3. The PCRA court did not enter the order dismissing Appellant's PCRA petition until September 24, 2018. PCRA Court Order, 9/24/18, at 1.

Appellant filed a third notice of appeal on October 9, 2018. That same day, the PCRA court granted Appellant's request for the appointment of counsel. PCRA Court Order, 10/9/18, at 1. Appellate-counsel, David Barrish, Esq., entered his appearance on October 19, 2018. On October 22, 2018, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). PCRA Court Order, 10/22/18, at 1. Attorney Barrish filed a motion requesting an extension

_____

[1] On September 24, 2019, this Court dismissed the appeal docketed at 2962 EDA 2018 as duplicative of the instant appeal: 3141 EDA 2018. Order, 9/24/19 at 1.

- 5 -

on November 9, 2018, which the PCRA court subsequently granted on January 23, 2019. PCRA Court Order, 1/23/19, at 1. In its order, the PCRA court directed Appellant, through counsel, to file his 1925(b) statement on or before February 21, 2019. *Id.*

On February 11, 2019, however, Attorney Barrish filed a petition to withdraw as counsel. Petition to Withdraw, 2/11/19, at *1-2 (un-paginated). In his petition, Attorney Barrish explained that further representation of Appellant would result in a conflict of interest because Appellant filed a lawsuit against him for: breach of contract, tortious interference with contractual relations, civil conspiracy, negligence and legal malpractice. *Id.* In addition, on February 17, 2019, Attorney Barrish filed a motion to stay the order to file a Rule 1925(b) statement "pending the outcome of a hearing on the aforementioned [p]etition to [w]ithdraw" or, in the alternative, a *Grazier* hearing. Motion to Stay, 2/17/19, at *2 (un-paginated).[2]

On March 18, 2019, the PCRA court granted both Attorney Barrish's petition to withdraw and the motion to stay the order to file a Rule 1925(b) statement. On April 16, 2019, the PCRA court appointed Daniel Alvarez, Esq. to represent Appellant. On May 31, 2019, however, the PCRA conducted a second *Grazier* hearing during which it permitted Attorney Alvarez to

---

[2] Attorney Barrish also, "in an abundance of caution," filed a petition for an extension of time to file a Rule 1925(b) statement on February 21, 2019. Petition to Extend Time to File Concise Statement of Errors Complained of On Appeal, 2/21/19, at *2 (un-paginated).

- 6 -

withdraw and permitted Appellant to proceed *pro se*, with stand-by counsel.[3]

Thereafter, on June 3, 2019, Appellant filed a *pro se* concise statement. The

PCRA court filed its opinion pursuant to Rule 1925(a) on August 23, 2019.

Appellant raises the following issues on appeal:

I.   Did the PCRA court commit reversible error by failing to grant three motions?

    a. [The PCRA court erred in failing to grant Appellant's motion for appointment of an expert.]

    b. [The PCRA court erred in failing to grant Appellant's motion for appointment of an investigator.]

    c. [The PCRA court erred in failing to grant Appellant's request for discovery.]

II.   Did the PCRA court err and abuse its discretion when [it] dismissed [Appellant's] PCRA petition [after Appellant's response to the court's 907 notice necessitated a hearing and Appellant raised valid claims of trial counsel's ineffectiveness?]

III.   Did the PCRA court deprive [Appellant] of his right to counsel?

Appellant's Brief at 5 and 11-15.

Before reaching the merits of Appellant's claims, we first consider

whether he filed a timely Rule 1925(b) statement. As we have explained:

> In **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998), our Supreme Court held that in order to preserve claims for appellate review, an appellant must comply with a trial court order to file a [s]tatement of [m]atters [c]omplained of on [a]ppeal, pursuant to Pa.R.A.P. 1925(b). Our Supreme Court recently reiterated the bright-line rule established in **Lord**, holding that "failure to comply

---

[3] Stand-by counsel, Matthew Sullivan, Esq., entered his appearance on June 3, 2019.

with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised [on appeal]." ***Commonwealth v. Schofield***, 888 A.2d 771, 774 (Pa. 2005); ***see also Commonwealth v. Castillo***, 888 A.2d 775 (Pa. 2005) (same). If an appellant does not comply with an order to file a Rule 1925(b) statement, all issues on appeal are waived—even if the Rule 1925(b) statement was served on the trial judge who subsequently addressed in an opinion the issues raised in the Rule 1925(b) statement. Although recognizing that such a strict application of the Rule may be harsh, our Supreme Court stressed that failure to file the Rule 1925(b) statement "results in the inability of the appellate courts to determine which issues were presented to the trial court, and thus preserved for appeal, and whether the trial court received the statement within the required time period." [***Schofield***,] 888 A.2d at 774-775.

***In re L.M.***, 923 A.2d 505, 509 (Pa. Super. 2007) (some citations omitted) (emphasis omitted); ***see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("it is no longer within [the Superior] Court's discretion to review the merits of an untimely Rule 1925(b) statement based solely on the trial court's decision to address the merits of those untimely raised issues").

Upon request, however, a PCRA court may "enlarge the time period initially specified or permit an amended or supplemental [s]tatement to be filed." Pa.R.A.P. 1925(b)(2)(i). Indeed, Rule 1925(b)(2)(i) states:

The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the [s]tatement. Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental [s]tatement to be filed. Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the [s]tatement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. In extraordinary circumstances, the judge may allow for the filing of

a [s]tatement or amended or supplemental [s]tatement *nunc pro tunc*.

*Id*.

Upon review, we conclude that Appellant's *pro se* concise statement filed June 3, 2019 was timely. As detailed above, the PCRA court ordered Appellant to file a concise statement on October 22, 2018. On November 9, 2018, however, Appellant's then-recently appointed appellate counsel requested an extension. The PCRA court granted counsel's request and ordered Appellant to file his concise statement on or before February 21, 2019. On February 17, 2019, Appellant's counsel filed a motion to stay the order to file a Rule 1925(b) statement because counsel recently filed a petition to withdraw. In that motion, Appellant's counsel requested that the court stay the order "pending the outcome of a hearing on the aforementioned [p]etition to [w]ithdraw" or, in the alternative, a *Grazier* hearing. Motion to Stay, 2/17/19, at *2 (un-paginated). The PCRA court granted the motion to stay on March 18, 2019. Ultimately, the court held a *Grazier* hearing on May 31, 2019 and permitted Appellant to proceed *pro se*. As Appellant filed his concise statement on June 3, 2019, immediately following the conclusion of the *Grazier* hearing, we conclude that Appellant filed a timely Rule 1925(b) statement.

In his first appellate issue, Appellant claims that the PCRA court abused its discretion by failing to grant three separate motions. Specifically, Appellant claims that the PCRA court erred because it did not grant his motion for the

appointment of an expert, his motion for the appointment of an investigator, and his motion for discovery. Upon review, however, we conclude that this issue is waived as Appellant failed to include this claim in his June 3, 2019 Rule 1925(b) statement.[4] Pa.R.A.P.1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement ... are waived"); *McKeeman v. CoreStates Bank, N.A.*, 751 A.2d 655, 658 (Pa. Super. 2000) ("[a]n appellant's failure to include an issue in his [Rule] 1925(b) statement waives that issue for purposes of appellate review"); *Castillo*, 888 A.2d at 780.

Next, Appellant argues that the PCRA court erred because it dismissed his PCRA petition without an evidentiary hearing. Our standard of review is as follows:

> As a general proposition, an appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. [This C]ourt's scope of review is limited to the findings of the PCRA court and the evidence on the record [] viewed in the light most favorable to the prevailing party.

---

[4] As noted above, Appellant did not raise this issue in his concise statement filed June 3, 2019. Appellant, however, filed multiple *pro se* Rule 1925(b) statements. Specifically, he filed a *pro se* concise statement on October 15, 2018, November 13, 2018, and February 11, 2019. Appellant arguably raised this issue in his February 11, 2019 *pro se* concise statement. *See* Appellant's *Pro Se* Rule 1925(b) Statement, 2/11/19, at 6. From October 9, 2018 to March 18, 2019, however, Appellant was represented by Attorney Barrish. As such, the Rule 1925(b) statements filed by Appellant *pro se* while represented by counsel "have no legal effect and, therefore, are legal nullities." *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016) (citation omitted). "In this Commonwealth, hybrid representation is not permitted." *Id.* Therefore, the fact that he raised this issue in the February 11, 2019 concise statement is of no legal effect and we conclude that this issue is waived.

*Commonwealth v. Hammond*, 953 A.2d 544, 556 (Pa. Super. 2008) (citations and quotations omitted).

As this Court previously explained, there "is no absolute right to an evidentiary hearing on a PCRA petition." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). Rather, a PCRA court "has the discretion to dismiss a petition without a hearing when the court is satisfied 'that there are no genuine issues concerning any material fact.'" *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013) (citation omitted). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007), *appeal denied*, 934 A.2d 72 (Pa. 2007).

Appellant first argues that his "comprehensive response to the PCRA court's 907 [n]otice . . . warranted" an evidentiary hearing. Appellant's Brief at 23. As such, Appellant claims that the PCRA court "abused its discretion when [it] dismissed [his] PCRA [p]etition without a hearing." *Id*. We disagree.

Herein, Appellant filed a response to the PCRA court's notice on June 25, 2018. Appellant filed a second response on July 11, 2018. The claims raised in Appellant's responses, however, did "not relate to material issues of fact." PCRA Court Opinion, 8/23/19, at 12. Appellant also did not "produce[ any] evidence" to support his claims. *Id*. at 11. Instead, he "made empty claims

that documents exist[ed] that would prove his innocence without actually indicating what these documents are or where they might be found." ***Id.*** Furthermore, Appellant's various claims in his responses were "directly refuted by the evidence of record." ***Id.*** We therefore conclude that Appellant's responses to the PCRA court's Rule 907 notice did not warrant an evidentiary hearing and Appellant's claim to the contrary is meritless.

Appellant also claims that his PCRA petition raised valid claims of ineffective assistance of trial counsel and, as such, the PCRA court should have held an evidentiary hearing. Specifically, Appellant argues that trial counsel was ineffective for "failing to investigate" the "situs of the fire" or "the Commonwealth witnesses['] motives to testify." Appellant's Brief at 24 and 26. Appellant also argues that trial counsel provided ineffective assistance by not "retain[ing] either a consulting or testifying expert in the field of fire science." ***Id.*** at 26.

The mere fact that a PCRA petitioner raises a claim of ineffective assistance of counsel does not entitle him to an evidentiary hearing as of right. ***Roney***, 79 A.3d at 604. In fact, our Supreme Court previously "stress[ed] that an evidentiary hearing 'is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." ***Id.*** at 604 (citation omitted). Accordingly, if the PCRA court can determine – without an evidentiary hearing – that "one of the prongs [of an ineffective assistance claim] is not met, then no purpose would be advanced by holding an evidentiary hearing." ***Jones***, 942 A.2d at 906.

To establish a claim of ineffective assistance of counsel, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted).

> The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* (citation omitted).

We have explained that

> [a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 ([Pa.] 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . ., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some internal quotations and citations omitted).
>
> ***
>
> Moreover, "[a] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 ([Pa.] 2009) (citation omitted).

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043–1044 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1029 (Pa. 2019) (parallel citations omitted).

Herein, Appellant utterly failed to demonstrate that trial counsel lacked a reasonable basis for his chosen action and that he suffered prejudice. Indeed, Appellant's claim that trial counsel was ineffective in his investigation or decision to not obtain an expert is nothing more than a bald assertion. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011). Appellant's underdeveloped claim of ineffectiveness fails and, as such, the PCRA court did not err in dismissing his PCRA petition without an evidentiary hearing.

Lastly, Appellant argues that the "PCRA court deprived [him] of his right to counsel." Appellant's Brief at 27. Appellant claims that, after he "received the PCRA court's pre-dismissal notice" on June 11, 2018, he "realized [that] proceeding *pro se* would not produce the results he sought." ***Id.*** at 30. As such, Appellant "requested the court to appoint counsel" and the court did not do so. ***Id.*** Upon review, we conclude that the record belies Appellant's claim.

- 14 -

As explained above, Appellant filed his PCRA petition *pro se* on September 22, 2015. On May 9, 2017, court-appointed counsel George S. Yacoubian Jr., Esq. entered his appearance. Appellant, however, filed a motion to proceed *pro se* on July 27, 2017, and on August 2, 2017, Attorney Yacoubian Jr. sought leave to withdraw as counsel. The PCRA court conducted a **Grazier** hearing on November 6, 2017 and permitted Appellant to proceed *pro se*.

Appellant "only proceeded *pro se* until he filed a motion for appointment of counsel on August 20, 2018." PCRA Court Opinion, 8/23/19, at 17. The court appointed David Barrish, Esq. to represent Appellant as appellate counsel on October 9, 2018. Attorney Barrish represented Appellant until March 18, 2019, when the PCRA granted his motion to withdraw. Thereafter, the PCRA court appointed new appellate counsel, Daniel Alvarez, Esq., on April 16, 2019. On May 31, 2019, however, the PCRA court conducted a second **Grazier** hearing during which it permitted Attorney Alvarez to withdraw and Appellant to proceed *pro se*. The court also appointed current appellate counsel, Matthew Sullivan, Esq., as standby counsel that same day. Accordingly, a review of this tortured procedural history demonstrates that the PCRA court "took the necessary steps to ensure [Appellant's] right to counsel was upheld throughout the entire . . . PCRA process." PCRA Court Opinion, 8/23/19, at 18. Appellant's claim that he was deprived of his right to counsel therefore lacks merit.

For the foregoing reasons, we affirm the PCRA court's dismissal of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/20